**RUSING LOPEZ & LIZARDI, P.L.L.C.**
7047 E. Greenway Parkway, Suite 400
Scottsdale, AZ 85254
Telephone: (602) 261–7101
Facsimile: (480) 863-1523
twitthoft@rllaz.com

Theodore P. Witthoft
State Bar No. 021632

Attorneys for Beaver Creek Golf Resort, LLC

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>SEDONA VINEYARDS LLC,<br>　　　　　　Debtor.<br>_____<br>BEAVER CREEK GOLF RESORT,<br>LLC, Movant,<br>vs.<br>SEDONA VINEYARDS LLC,<br>Debtor/Respondent | In Proceedings Under Chapter 11, Subchapter V<br><br>Case No. 2:24-bk-09126-BMW<br><br>**REPLY IN SUPPORT OF BEAVER CREEK GOLF RESORT, LLC'S MOTION TO DECLARE STAY INAPPLICABLE, PURSUANT TO 11 U.S.C. § 362(n); OR, ALTERNATIVELY, TO LIFT STAY AGAINST PROPERTY, PURSUANT TO 11 U.S.C. § 362(d)**<br><br>**Hearing Date: January 28, 2025**<br>**Hearing Time: 10:30 a.m.**<br>**Hearing Location: Via Videoconference** |

Beaver Creek Golf Resort, LLC ("Beaver Creek" or "Movant"), by and through its attorneys, Rusing Lopez & Lizardi, P.L.L.C., hereby submits its reply ("Reply") in support

of Beaver Creek's *Motion to Declare Stay Inapplicable, Pursuant to 11 U.S.C. § 362(n); Or, Alternatively, to Lift Stay against Property, Pursuant to 11 U.S.C. § 362(d)* ("Motion").

The Motion was filed on November 24, 2024. The deadline to file a response to the Motion was January 14, 2025. There was one response ("Response") to the Motion filed by Sedona Vineyards LLC ("Debtor"). No other responses were filed, and the time to do so has expired.

For the reasons set forth herein, the Motion should be approved, and an order should be entered declaring the automatic stay was not in effect on the date the deed of trust sale of the Real Property[1] occurred. This Reply is supported by the accompanying Memorandum of Points and Authorities, the attached exhibit, and the entire record before the Court, all of which are incorporated herein by this reference.

**MEMORANDUM OF POINTS AND AUTHORITIES**

As an initial matter, notwithstanding Movant's belief that its position herein regarding the stay is correct, Beaver Creek's hope is that this Court will approve the proposed settlement between the Debtor and Beaver Creek set forth in *Motion to Approve Beaver Creek Settlement and Compromise Pursuant to 9019* filed at docket number 43 ("Settlement Motion"). Approval of the Settlement Motion would resolve all issues in Beaver Creek's Motion and allow the Debtor an opportunity to obtain a loan (or possibly sell the Real Property) on or before March 31, 2025, to satisfy Debtor's obligation to Beaver Creek.

The settlement was negotiated in good faith by Beaver Creek, and it was properly noticed to all parties of interest. There have been no objections filed with the Court, and the time to do so has expired. Beaver Creek believes approval of the Settlement Motion is in the best interests of the creditors of the estate and should be approved under the *Woodson* factors,

---

[1] Capitalized terms have the same meaning as in the Motion.

REPLY.Motion.to.Declare.Stay.Inapplicable 2

because the alternative, if the Court finds the foreclosure of the Real Property was valid, would leave few or no assets in this estate for the remaining creditors. Nevertheless, if the Court is not inclined to approve the Settlement Motion, the Court should approve Beaver Creek's Motion for the following reasons.

### **The Debtor was a "small business debtor" in the First Chapter 11 Case**

The Debtor essentially argues in the Response that because it failed to adhere to the requirements of Bankruptcy Rule 1020 in its previous bankruptcy case[2] by properly identify itself as a "small business debtor", somehow Debtors' noncompliance changes the First Chapter 11 Case to something other than a "small business case." In other words, the Debtor believes it can avoid being classified as a "small business debtor" by simply denying it. The Debtor is wrong.

Prior to BAPCPA, a Chapter 11 debtor elected whether to proceed as a small business and incur the burdens and benefits associated with such an election. *In re Roots Rents, Inc.*, 420 B.R. 28, 34–35 (Bankr. D. Idaho 2009) (citing 11 U.S.C § 1121(e) (2004), which established certain deadlines "[i]n a case in which the debtor is a small business and elects to be considered a small business [.]" (Emphasis added)). BAPCPA eliminated any "election" by the debtor by amending former § 101(51 C) and defining a "small business case" in relevant part as "a case filed under chapter 11 of this title in which the debtor is a small business debtor." *Id.*[3]

The Debtor in this case cannot choose whether it is a "small business debtor." It either is or it is not. If the Debtor satisfied the debt and type-of-business limitations under 11 U.S.C.

---

[2] Case number 2:24-bk-07991-MCW (hereinafter, the "First Chapter 11 Case").
[3] (citing Hon. Thomas E. Carlson & Jennifer Frasier Hayes, The Small Business Provisions of the 2005 Bankruptcy Amendments, 79 Am. Bankr.L.J. 645, 679 (2005) ("The most important change in the definition of small business debtor is that small business treatment is no longer elective. The cost-and-delay reduction provisions are now mandatory for all Chapter 11 debtors who satisfy the debt and type-of-business limitations of § 101(51D).")).

REPLY.Motion.to.Declare.Stay.Inapplicable 3

§ 101(51D) (as the Debtor admitted to in the present bankruptcy case 4-5 hours after the dismissal of the First Bankruptcy Case), the Debtor is a "small business debtor."

Bankruptcy Rule 1020 was simply enacted as a new rule reflecting the change in the definition of a small business debtor made by the 2005 Act. *See Roots Rents*, 420 B.R. at 39. The former rule was deleted, and the new rule provided a procedure for informing the parties, the United States Trustee, and the Court of whether the debtor is a small business debtor. *Id.* It also provides procedures for bringing to the Court a dispute involving the proper characterization of the debtor. *Id.* Because it is important to resolve such disputes early in the case, a time limit for objecting to a debtor's self-designation is imposed. *Id.*

Bankruptcy Rule 1020(b), in relevant part, provides that the United States Trustee or party in interest may file an objection to a debtor's designation within 30 days after the <u>conclusion</u> of the Section 341 meeting of creditors. That time-period did not expire in the First Chapter 11 Case, because the Section 341 meeting of creditors was never <u>concluded</u>. Indeed, the 341 meeting of creditors never even occurred, because the First Chapter 11 Case was dismissed prior to the 341 meeting of creditors scheduled for October 29, 2024.[4]

It would be absurd to allow the Debtor to escape being considered a "small business debtor" because it failed to properly designate itself as such and it caused its case to be dismissed prior to the expiration of the deadline to object to its designation. At the very least, Beaver Creek should have the opportunity to object to the Debtor's failure of designation at this time.[5] However, such an objection should not be necessary, because the Debtor fits within the definition of a "small business debtor" regardless of whether Debtor designates itself as such.

---

[4] The First Chapter 11 Case was dismissed on October 25, 2024.

[5] In addition to the fact the original deadline under Bankruptcy Rule 1020 has not expired in the First Chapter 11 Case because the 341 meeting of creditors was not concluded, Bankruptcy Rule 9006(b)(1) governs enlargement of time to the time limits set forth in Rule 1020. *See Roots Rents*, 420 B.R. at 39. Bankruptcy Rule 9006(b)(1) provides that the Court may "at any time and for cause" allow an act to be performed if the failure to act resulted from excusable neglect.

REPLY.Motion.to.Declare.Stay.Inapplicable 4

**No Stay existed to preclude the Deed of Trust Sale, pursuant to 11 U.S.C. § 362(n)**

Section 362(n) provides that the automatic stay does not apply in a case where the debtor was a debtor in a *small business case* that was dismissed for *any reason* by an order that became *final in the 2-year period ending on the date of the order for relief* entered with respect to the petition. *See* 11 U.S.C. § 362(n)(B) (emphasis supplied).

A "small business case" means "a case filed under chapter 11 of this title in which the debtor is a *small business debtor* and *has not elected that subchapter V of chapter 11 of this title shall apply*." *See* 11 U.S.C. § 101(51C) (emphasis supplied). As set forth above, the definition of a "small business debtor" does not include or require an election that the debtor intends to be treated as a "small business debtor." Instead, the definition simply means "a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $3,024,725 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor." *See* 11 U.S.C. § 101(51D).

The Debtor has conceded it is a "small business debtor." The Debtor did not elect to have subchapter V apply in the First Chapter 11 Case. Therefore, the Debtor was a debtor in a "small business case" in the First Chapter 11 Case.

The First Chapter 11 Case was dismissed for the Debtor's failure to file its schedules and statements (i.e., dismissed for "any reason"). The Order dismissing the First Chapter 11 Case is final and was entered within two years prior to the present case. Therefore, the elements of Section 362(n)(1) have been met, and the stay did not come into effect in the present case.

## ALTERNATIVE RELIEF

### The automatic stay should be lifted, pursuant to 11 U.S.C. § 362(d)

Alternatively, and without waiving the foregoing, to the extent the automatic stay is applicable in this case, cause exists to lift the stay under 11 U.S.C. § 362(d). As set forth in the Motion, the Debtor is not generating any income to service the loan to Beaver Creek or any other loan, so there does seem to be any ability to provide adequate protection payments. To counter that lack of income to provide adequate protection, the Debtor asserts in its Response that there is considerable equity in the Real Property. However, Debtor's valuation seems dubious given it was unable to obtain any financing using the Real Property as collateral and the Real Property was sold at a deed of trust sale for Beaver Creek's credit bid of a little over $2 Million. One would think that, if the Real Property had the estimated value of $6.5 Million or more as asserted by the Debtor, there would have at least been some bidding at the deed of trust sale. There was no bidding at all.

The Debtor has now filed an application to appoint a realtor, because it believes the sale of the Real Property is in the best interests of the estate. Apparently, this case is no longer about an attempt to reorganize, but instead, it is a case about the liquidation of assets. As such, the stay should be lifted, because the Real Property is not necessary for a reorganization, pursuant to 11 U.S.C. § 362(d)(2).

Furthermore, the continued expense of going through the plan of reorganization process seems extremely costly given there are so few creditors. The claims bar date has expired, and the claims register reflects there are only $49,489.52 in claims filed with the Court. Of this amount, $11,161.20 are Debtor's accumulated unpaid property taxes secured by the Real Property owed to Yavapai County. Beaver Creek's deficiency claim of $30,934.16 (Claim 5-1) makes up over 80% of the remaining $38,489.52 in unsecured claims. Given how small the pool of creditors is, and the Debtor's inability to keep current on its loan

with Beaver Creek over the past years or find a suitable buyer, perhaps, if the Court is not inclined to lift the stay, this case should be dismissed or converted to allow a Chapter 7 trustee to go forward with a liquidation.

In addition to the fact the Debtor has failed to pay its property taxes, Beaver Creek has serious concerns about whether the Debtor has maintained insurance. The Debtor has indicated in its most recent operating report that insurance has been paid. *See Debtor's Operating Report* docket number 56. However, Beaver Creek received cancellation of insurance for non-payment attached hereto as Exhibit A and incorporated herein by this reference. On two occasions, undersigned counsel attempted to get proof of insurance from the Debtor (through its counsel), but, as of the date of this filing, no proof of insurance has been provided. Beaver Creek requests the Court order the Debtor to provide proof of current insurance for the Real Property and evidence that said insurance has been maintained throughout this case as has been asserted by the Debtor.

Lastly, the multiple filings of the Debtor raises issues under 11 U.S.C. § 362(d)(4). Beaver Creek finds it peculiar that the Debtor did not simply seek to reinstate the First Chapter 11 Case instead of filing an entirely new case only a few hours after dismissal of the First Chapter 11 Case. This is particularly strange when coupled with the facts that: (1) the Debtor provided no notice of the present bankruptcy case to Beaver Creek despite Beaver Creek having made an appearance in the First Chapter 11 Case and there was a pending deed of trust sale, and (2) the Debtor did not file its master mailing list until after the deed of trust sale of the Real Property was completed when the master mailing list in the present case is nearly identical to the MLL filed in the First Chapter 11 Case. If the Court sets the Motion for a final hearing on stay relief, Beaver Creek requests the Court allow Beaver Creek to conduct discovery on the issues of whether the Debtor filed the present bankruptcy petition

as part of a scheme to delay, hinder or defraud Beaver Creek using multiple bankruptcy filings affecting the Real Property, pursuant to 11 U.S.C. § 362(d)(4)(B).

## CONCLUSION

As stated above, Beaver Creek would still like to see the Settlement Motion approved and the Debtor have one last chance to pay its obligation to Beaver Creek on or before <u>March 31, 2025</u>. However, if the Settlement Motion is not approved, Beaver Creek respectfully requests the Court declare that no stay was in effect on the Petition Date or at the time of the deed of trust sale of the real property, pursuant to 11 U.S.C. § 362(n). Alternatively, Beaver Creek requests the stay be lifted for the reasons set forth herein.

Respectfully submitted this 23rd day of January, 2025.

**RUSING LOPEZ & LIZARDI, P.L.L.C.**

*/s/ Theodore P. Witthoft*
Theodore P. Witthoft
Attorneys for Creditor Beaver Creek
Golf Resort, LLC

COPIES of the foregoing were served January 23, 2025 via the Court's CM/ECF Notification System on all parties that requested notice in this case, including counsel for the Debtor(s), if any, identified below, with additional COPIES *e-mailed or mailed by U.S. Mail to the following parties as indicated below:

*Ronald J. Ellett
Ellett Law Offices, P.C.
2999 North 44th Street
Suite 330
Phoenix, AZ 85018
Email: Rjellett@Ellettlaw.Com

*Dawn M. Maguire
Trustee Maguire
10115 E. Bell Rd., Ste. 107 #498
Scottsdale, AZ 85260
Email: Trustee@Maguirelawaz.Com

*Patty Chan
Office Of The United States Trustee
230 N. First Ave., #204
Phoenix, AZ 85003
Email: Patty.Chan@Usdoj.Gov

By U.S. Mail:

Sedona Vineyards LLC
2024 N. 7th Street, Ste 202
Phoenix, AZ 85006


By: */s/ Gaby Leckbee*

| 1 |
| 2 |
| 3 |
| 4 |
| 5 |
| 6 |
| 7 |
| 8 |
| 9 |
| 10 |
| 11 |
| 12 |
| 13 |
| 14 |
| 15 |
| 16 |
| 17 |
| 18 |
| 19 |
| 20 |
| 21 |
| 22 |
| 23 |
| 24 |
| 25 |

# Exhibit A

LexisNexis/FIRSt
PO Box 170910
Milwaukee, WI 53217-4504

**LexisNexis is not the Insurance Company. Do not send premium payments to LexisNexis/FIRSt.**

- For any and all policy changes you must contact the Insurance Company, Carrier, or Producer listed in the detail below.
- For all cancellation, non-renewal, expiration, and lapse notices - all coverage will cease at 12:01AM local time at the premises, unless otherwise shown in the item detail provided.
- Premium Bill and Renewal Bill items require action on the part of the Loss Payee/Mortgagee listed.
- Financial institutions can request electronic notices at FIRStTrackers@lexisnexisrisk.com. Notices cannot be sent to personal email accounts.
- This Insurance notice is sent to you as the Loss Payee/Mortgagee/Additional Interested Party on behalf of the carrier listed.

**IMPORTANT:**
**INSURANCE COVERAGE NOTIFICATION(S)**

3057329-19632429-2-M     06327   11   S1     14

BEAVER CREEK GOLF RESORT LLC
1645 W MOORE RD
TUCSON AZ 85755-9125

**Total Property Notifications with this document: 1    December 10, 2024**     Notifications may print on back of page and on subsequent pages.

**Policy:** 0201G2401        **REASON:** Cancellation - Non-Pay Premium        **Carrier:** AMERICAN NATIONAL PRTY & CASU

**Mortgagee/Add.Party:** BEAVER CREEK GOLF RESORT LLC -1645 W MOORE RD-TUCSON-AZ-85755        **Pol. Type:** Farm
**Insurance:** AMERICAN NATIONAL PRTY & CASU-PO Box 656-Albany-NY-12201        **Eff. Dte:** 12/26/2024 12:01 AM ST
**Producer:** QUESTIONS - CONTACT CUSTOMER SERVICE AT 800.843.3276        **Pol. From:** 05/01/2024 **Pol. To:** 05/01/2025
**Prop. Loc:**
**Loan #:**        **PremiumAmount:** 1405.82

   **Due Dt:** 12/26/2024
   **Payable To:**
   AMERICAN NATIONAL PRTY & CASU
   PO Box 656
   Albany, NY 12201

FIRSt Id: 28401-I99-19632429-781714071