*TERRY A. DAKE, LTD.*
P.O. Box 9134
Phoenix, Arizona 85068-9134
Telephone: (602) 710-1005
tdake@cox.net

**Terry A. Dake - 009656**

Attorney for Trustee

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| In re: | ) | In Chapter 7 Proceedings |
| SEDONA VINEYARDS, LLC; | ) | Case No. 2:24-BK-09126-BMW |
| Debtor. | ) | Hearing Date: April 7, 2026 |
| | ) | Hearing Time: 10:00 a.m. |

**REPLY IN SUPPORT OF ABANDONMENT**

The trustee submits this reply in support of his Notice Of Abandonment at DE 132 and in response to the objections at DE 134 (Innes Construction) and DE 135 (Sandhill Holdings et al.) The trustee's reply is more fully set forth in and is supported by the following Memorandum Of Points and Authorities.

DATED February 26, 2026.

*TERRY A. DAKE, LTD.*

By /s/ TD009656
   Terry A. Dake
   P.O. Box 9134
   Phoenix, Arizona 85068-9134

**MEMORANDUM OF POINTS AND AUTHORITIES**

This case was filed under Subchapter V on October 25, 2024. The case was filed to stop the foreclosure of a vendor's carry back lien on real property the debtor purchased on August 31, 2022 for $2,500,000.00 with a down payment of just $17,500.00.

When the case was filed, the debtor said the land was worth $6.5M and that the carry back debt was $2,062,850.56. The carry back lender, Beaver Creek Golf Resort, LLC, filed Claim No. 5 for $2,278,364.45. As reported to the Court at the initial case management hearing, the debtor had no revenue and no employees. DE 51.

On April 15, 2025, the Court approved a stipulation that required the debtor to pay off Beaver Creek in full by September 13, 2025 failing which the case would be converted to Chapter 7. DE 85. That payment was not made. DE 107. The case was then converted to Chapter 7 on October 2, 2025. DE 111.

Prior to conversion, the debtor hired a realtor to market the property for sale. DE 54. According to the listing agreement at DE 54, the list price was $11,650,000.00.

When the case converted, the trustee contacted the retained realtor and learned that the list price had been reduced to $7,825,000.00. The trustee then reduced the price to $3,500,000.00. A sale for $3.5M would pay in full the carry back lender and all of the scheduled creditors.

Since reducing the price to $3.5M, the realtor has not received any offers.

On November 10, 2025, the trustee received a letter of intent from a California LLC proposing to purchase the property for $3,000,000.00. The trustee advised that he would need not less than $3.5M to be able to pay the creditors of the bankruptcy. While the LLC agreed to increase the purchase price, it was unable to provide proof of funds.

2

Other than that, there have been no other offers to purchase the property.

In late November of 2025, the trustee asked a local broker, ROI Properties, to evaluate the property. ROI concluded that the property could be sold for approximately $3.2M, short of the amount required to pay all of the listed creditors.

On January 20, 2026, the debtor's principal, Doug Edgelow, called to report that the county was demanding the removal of weeds from the property. He subsequently provided an email from the county indicating that the county was still pursuing enforcement actions including a penalty in excess of $10,000.00. The county also recorded a penalty assessment against the property on May 14, 2025 for repairs to the lake on the property.

The bankruptcy estate has no funds. The estate cannot meet the county's requirements or otherwise maintain the property. The estate has no insurance coverage.

In light of these facts, and the lengthy marketing which has already taken place, the trustee does not believe that the debtor's property can be sold for an amount that will provide any meaningful distribution to creditors. That, coupled with the lack of funds to meet the ongoing demands of the county or otherwise maintain the property, and the lack of funds to obtain insurance coverage, tells the trustee that abandonment must occur.

The trustee's job is to exercise his business judgment in the administration of the estate, and this Court supervises the trustee's conduct. *See, In re Chi-Feng Huang*, 23 B.R. 798 (9th Cir. BAP 1982). The

3

same analysis applies to the trustee's decision to abandon a potential asset. *In re Sullivan & Lodge, Inc.*, 2003 WL 22037724, *4 (N.D. Cal.); *In re Moore*, 110 B.R. 924, 928 (Bankr. C.D. Cal. 1990).

Here, the trustee has evaluated the real estate, tried to sell it, and has been unable to obtain a buyer. Moreover, the estate lacks any funds to provide the bare essentials of maintenance and insurance. The trustee cannot simply proceed on "hope" and run the risk that something bad (a wildfire for example) happens before a sale can occur.

Objector Innes Construction appears to be an insider, as the principal of Innes and the principal of the debtor are both named Edgelow, and the debtor's Schedule F at DE 22 identifies Innes as an "affiliate". Given this relationship, if the property is abandoned, and the debtor can then sell it, the debtor can pay Innes.

As for the appraisal referred to by Innes, the trustee neither missed it nor overlooked it. The trustee obtained a copy of it from debtor's counsel on October 8, 2025. But, like all opinions of value, the proof is in the pudding. The trustee has been unable to sell this property for even $3.5M, let alone the "estimated" value of $7.8M.

Finally, Innes is not represented by counsel and, therefore, cannot appear before this Court. *Rowland v. California Men's Colony*, 506 U.S. 194, 201, 113 S. Ct. 716, 721, 121 L.Ed. 2d 656 (); *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697-698 (9th Cir. 1987).

With regard to the objection of Sandhill Holdings et al., Sandhill raises no objections, only questions. While trustee thought that he had answered Sandhill's questions in a pre-objection phone call, this response should do so. In particular, the broker received no

4

legitimate offers, the list price was substantially reduced by the trustee as soon as the case converted, and the property has been continually listed on the MLS since the debtor listed it in January of 2025. DE 54. The final list price has been $3.5M. Even that price has not attracted any buyers.

**WHEREFORE**, the trustee prays for the entry of an order overruling the objections and approving the abandonment.

DATED February 26, 2026.

*TERRY A. DAKE, LTD.*

By /s/ TD009656
Terry A. Dake
P.O. Box 9134
Phoenix, Arizona 85068-9134

COPY e-mailed/mailed February 26, 2026 to:

Geoffrey Edgelow, Owner
Innes Construction LLC
7807 E Hubbel Street
Scottsdale, AZ 85257

Grant L. Cartwright (030780)
MAY, POTENZA, BARAN & GILLESPIE, P.C.
1850 North Central Avenue, Suite 1600
Phoenix, AZ 85004-4633
Telephone: (602) 252-1900
Facsimile: (602) 252-1114
Email: gcartwright@maypotenza.com

/s/ TD009656

5